**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
KIMBERLY PEREZ ALVAREZ,                                    CASE NO.

                                    Plaintiff

v.                                                                    **COMPLAINT**


CUSHMAN & WAKEFIELD INC.,


                                    Defendant.
-------------------------------------------------------------------X

Plaintiff KIMBERLY PEREZ ALVAREZ ("Plaintiff"), by and through her undersigned attorneys, JOSEPH & NORINSBERG, LLC, alleges against Defendant CUSHMAN & WAKEFIELD INC. ("Defendant" or "Cushman & Wakefield") as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff is a 33-year-old woman who was overjoyed at the opportunity to work for Cushman & Wakefield, one of the largest commercial real estate firms in the world, after earning her bachelor's degree in Real Estate and gaining experience at a prior commercial real estate firm.

2.      When she began working for Cushman & Wakefield in March 2023, she managed critical operational functions, performed complex administrative tasks, and received positive feedback.

3.      Unfortunately, however, Plaintiff's excellent performance could not protect her from the escalating sexual harassment and discrimination by her direct supervisor, Charles Brown ("Brown").

4.      These comments and conduct, which evidence blatant discrimination and harassment on the basis of her gender, include, but are not limited to, the following:

1

a.  Murmuring in Plaintiff's ear that she was "old enough" after pressuring her to reveal her age;

b.  Whispering in Plaintiff's ear that he was "watching" her;

c.  Referring to Plaintiff as "young lady" and telling her not to speak loudly;

d.  Ordering Plaintiff to "spin around" for him in an effort to perversely examine her body;

e.  Repeatedly looking at Plaintiff from head to toe and commenting about her body;

f.  Physically touching Plaintiff's chin to direct her attention and gaze to him and calling her "baby girl."

5.  Brown made these comments while warning Plaintiff that he was "bigger than HR" – a plain threat and effort to leverage the power he wields at Cushman & Wakefield as a basis to scare Plaintiff into silence.

6.  Brown abused his authority by subjecting Plaintiff to these inappropriate comments, unwanted physical touching, and intimidation tactics.

7.  Plaintiff reported this misconduct to management and Human Resources on multiple occasions to no avail.

8.  Cushman & Wakefield did nothing to take corrective action or remediate Brown's conduct.  Instead, Cushman & Wakefield ratified the misconduct and left Plaintiff to fend for herself despite her protected complaints.

9.  Following her protected activity, Plaintiff was subjected to heightened scrutiny, disciplinary action, and ultimately termination.

10.     While this was occurring, Defendant also failed to compensate Plaintiff from in or around March 2023 until in or around March 2024 at the applicable overtime rate for all hours she worked in excess of forty (40) per week.

11.     Defendant's conduct was intentional, willful, and carried out with reckless disregard for Plaintiff's rights.

12.     Defendant's conduct constitutes a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"); New York Labor Law § 650 *et seq*. ("NYLL"); the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq*. ("NYSHRL"); the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq*. ("NYCHRL"); and the New York Common Law.  Accordingly, Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendant's failure to pay her overtime wages and subjecting her to blatant sexual harassment.

13.     Defendant engaged in a continuous pattern of unlawful conduct, including failing to pay Plaintiff overtime wages, subjecting her to sexual harassment, and engaging in a blatant pattern of retaliation against her after she complained.

14.     As a result, Plaintiff has suffered lost wages, emotional distress, and other damages.

## **JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is a diversity of citizenship among the parties and this action involves an amount in controversy that exceeds $75,000, excluding interests and costs. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3

16. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

17. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as a substantial part of the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## ADMINISTRATIVE REQUIREMENTS

18. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, within ten days of its filing, thereby satisfying the notice requirements of that section.

## PARTIES

19. Plaintiff is an individual domiciled in the State of New Jersey.

20. Plaintiff was at all relevant times an "employee" within the meaning of federal, State, and City law, protected from sexual harassment, retaliation, and discrimination on the basis of gender.

21. Defendant was at all relevant times Plaintiff's employer.

22. Defendant is a commercial real estate agency.

23. Defendant is a domestic business corporation organized under the laws of New York.

24. Defendant maintains a principal place of business at 1290 Avenue of the Americas, New York, NY, 10104, where Plaintiff was employed.

25. At all relevant times, Defendant exercised direct and substantial control over the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to: (i)

4

hire and fire employees; (ii) determine rates and methods of pay; (iii) set work schedules; (iv) supervise and control employees' work; and (v) otherwise affect the quality and conditions of employment.

26. At all relevant times, Defendant employed two or more employees and operated as an enterprise engaged in interstate commerce within the meaning of the FLSA. Defendant conducted business with vendors and clients located outside the State of New York, handled goods and materials that moved in interstate commerce, and generated annual gross revenues in excess of $500,000.00.

27. Accordingly, Defendant was Plaintiff's "employer(s)" within the meaning of the FLSA, NYLL, NYSHRL, and NYCHRL.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment

28. Plaintiff was employed by Cushman & Wakefield as a Property Administrator from approximately March 2023 through May 1, 2024.

29. Plaintiff performed operational and administrative functions related to Defendant's client properties, including coordination of maintenance, tenant services, and vendor management for residential buildings.

30. At all relevant times, Plaintiff reported to supervisory personnel within Cushman & Wakefield's New York office, including individuals with authority over her day-to-day work and employment conditions.

### Cushman & Wakefield's Wage Violations

31. At the start of her employment, Plaintiff was paid on an hourly basis at a rate of approximately $31.25 per hour.

32.    From in or around January 2024 until in or around May 2024, Plaintiff was paid on an hourly basis at a rate of approximately $32.00 per hour.

33.    Plaintiff was scheduled to work approximately forty (40) hours per week.

34.    In practice, however, from the commencement of her employment until in or around March 2024, Plaintiff typically worked more than forty (40) hours per week.

35.    Specifically, from in or around March 2023 until in or around March 2024, Plaintiff regularly worked five (5) days per week, as follows: two days per week from approximately 8:30 AM or 9:00 AM until approximately 7:00 PM or 8:00 PM, and three days per week from approximately 8:30 AM or 9:00 AM until 5:30 PM, for an average of approximately forty-nine (49) hours worked per week.

36.    From in or around March 2024 until the end of Plaintiff's employment, Plaintiff worked five (5) days per week as follows: Mondays through Fridays from approximately 9:00 AM until approximately 5:00 PM, for a total of approximately forty (40) hours worked per week.

37.    Throughout her employment, Plaintiff was afforded a one (1) hour paid meal break during her shifts.

38.    Throughout her employment, Defendant tracked Plaintiff's hours through a time-tracking application. It was standard practice for Plaintiff to clock out by 5:30 PM on each day worked, despite working additional hours twice a week.

39.    Plaintiff regularly performed work after her scheduled shifts, including responding to communications, coordinating building operations, and handling time-sensitive issues.

40.    Defendant was aware of Plaintiff's overtime work, including through direct supervision, workplace communications, and the nature of Plaintiff's assigned responsibilities.

41.     Specifically, Plaintiff's direct supervisor, Joann Simpson, was aware of the additional time Plaintiff worked beyond her scheduled shifts because she was regularly present and working alongside Plaintiff during these overtime hours.

42.     Despite this, Defendant only compensated Plaintiff for forty (40) hours per week.

43.     Plaintiff was a non-exempt employee who was entitled to be paid overtime wages equal to one and one-half (1.5) times her regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

44.     Although Plaintiff worked more than forty (40) hours per week during her employment, Defendant failed to pay Plaintiff overtime wages equal to one and one-half (1.5) times her regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

45.     Defendant's failure to pay overtime wages was willful.

### *Plaintiff Gets Routinely and Openly Sexually Harassed by Brown; Cushman & Wakefield Does Nothing*

46.     Throughout her employment, Plaintiff was subjected to repeated and unwelcome sexual harassment by Brown, a supervisory employee.

47.     Plaintiff was warned by superintendents that Brown had the reputation of making other female employees uncomfortable.  Clearly, it was well-known at Cushman & Wakefield that Brown had a propensity to sexually harass female employees.   Nevertheless, Cushman & Wakefield allowed Brown to hold supervisory authority over younger, female employees with little to no oversight.

48.     From the onset of Plaintiff's employment, Brown made inappropriate and suggestive comments to Plaintiff, including comments about her age and appearance.

49.    Brown also engaged in conduct designed to invade Plaintiff's personal space and assert control over her, including whispering into her ear and directing her to speak in a subdued manner.  Plaintiff never witnessed Brown making similar comments to male employees. It is inconceivable that Brown would have ordered a male employee to speak in such a way and is, instead, reflective of a stereotypical view that women should remain quiet.

50.    Brown made repeated comments about Plaintiff's body and appearance, including remarks concerning her weight and physical attributes.  Plaintiff never witnessed Brown making similar comments to male employees.

51.    Brown further referred to Plaintiff using sexist and demeaning terms, including "baby girl."

52.    On multiple occasions, Brown engaged in physically intrusive conduct, including touching Plaintiff's face to direct her attention to him and otherwise invading her personal boundaries.  Plaintiff never witnessed Brown physically touch a male in such a manner.

53.    In or about late August 2023, Brown summoned Plaintiff into his office alone and directed her to "spin," an order designed to objectify and degrade Plaintiff.

54.    Brown reinforced his conduct through intimidation, including statements to the effect that he was "bigger than HR," which Plaintiff understood as a threat that reporting his conduct would be futile because of who he was within Cushman & Wakefield's ranks.

55.    Over time, Brown's conduct escalated in both frequency and severity.

56.    Plaintiff became increasingly fearful of interacting with Brown and experienced significant anxiety in the workplace.

57.    Each time Plaintiff encountered Brown, she experienced physical and emotional symptoms, including anxiety, trembling, chest constriction, and distress.

58.     In no uncertain terms, Brown's conduct and Cushman & Wakefield's acquiescence of his unlawful conduct caused Plaintiff to fear for her safety and for her to be constantly vigilant of Brown's proximity to her—with his conduct worsening, Plaintiff had no clue of the bounds of Brown's perversity.  After all, he was routinely and openly sexually harassing her while Cushman & Wakefield did nothing. There was nothing stopping Brown.

***Plaintiff Complained About the Sexual Harassment***

59.     Plaintiff reported Brown's conduct to coworkers and supervisors, including her immediate supervisor, Property Manager Joann Simpson.

60.     Plaintiff also reported the harassment to Human Resources, including Human Resources representative Dawn Short-Austin.

61.     Plaintiff provided details of Brown's conduct and expressed concern about retaliation.

62.     Cushman & Wakefield initiated an internal process in response to Plaintiff's complaint.

63.     However, Cushman & Wakefield failed to take appropriate remedial action.

64.     On or about December 2023, Defendant informed Plaintiff that the investigation had been closed without any corrective action.  Brown would not suffer a single consequence for openly sexually harassing her.

65.     Cushman & Wakefield refused to provide Plaintiff with documentation of the investigation.

66.     Cushman & Wakefield's response to Plaintiff's complaints was not merely inadequate, but effectively condoned Brown's conduct. By concluding the investigation without any corrective action, refusing to provide documentation, and allowing Brown to continue

interacting with Plaintiff without restriction, Defendant signaled that such conduct would be tolerated.

67.    Following Plaintiff's complaint, Brown's conduct did not cease.  In fact, Cushman & Wakefield's inaction only emboldened Brown—he was untouchable.

68.    To make matters worse, Cushman & Wakefield permitted him to continue interacting with Plaintiff, creating a foreseeable risk that the harassment would persist and escalate.

69.    Cushman & Wakefield's failure to take corrective action, despite actual knowledge of the misconduct, constituted ratification of Brown's conduct and directly contributed to the continuation of the hostile work environment and subsequent retaliation.

***Defendant Retaliated Against Plaintiff***

70.    Immediately following Plaintiff's complaints, Defendant's treatment of Plaintiff changed markedly.

71.    While Defendant eventually changed Plaintiff's reporting structure, the retaliation continued, as Plaintiff was reassigned to report to a supervisor who maintained a close personal relationship with Brown, and Brown continued to appear at Plaintiff's worksite unannounced and interact with her directly.

72.    Cushman & Wakefield imposed heightened and excessive monitoring requirements on Plaintiff, including multiple daily check-ins. Plaintiff was not required to perform multiple daily check-ins prior to making a complaint.

73.    Cushman & Wakefield also issued unwarranted disciplinary warnings and subjected Plaintiff to increased scrutiny.  Prior to making a complaint, Plaintiff was never subjected to any discipline.

74. Plaintiff was placed on repeated Performance Improvement Plans in close temporal proximity to her complaints. Prior to making a complaint, Plaintiff was never placed on a performance improvement plan.

75. On or about April 2024, Defendant posted an advertisement for Plaintiff's position before the expiration of Plaintiff's performance improvement plan, making it evident that the performance improvement plan was simply pretext to force her out of the company for making a protected complaint.

76. On May 1, 2024, Defendant terminated Plaintiff's employment.

77. The timing and pattern of Defendant's conduct demonstrate that Plaintiff's termination was in retaliation for her complaints of sexual harassment.

78. Upon information and belief, Brown was aware of Plaintiff's complaints and participated in or influenced the retaliatory actions taken against her.

79. As of the filing of this complaint, Brown remains employed by Defendant.

**FIRST CAUSE OF ACTION**
**Failure to Pay Overtime Wages in Violation of the FLSA**

80. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

81. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the FLSA, 29 U.S.C. § 203.

82. Cushman & Wakefield failed to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207.

83. Cushman & Wakefield's failure to pay overtime wages was willful and in reckless disregard of the FLSA.

84.     As a result of Cushman & Wakefield's unlawful conduct, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest.

## SECOND CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of the NYLL

85.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

86.     At all relevant times, Plaintiff was an employee of Cushman & Wakefield within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

87.     Defendant failed to pay Plaintiff overtime wages at a rate of one and one-half times her regular rate of pay for hours worked in excess of forty (40) in a workweek, in violation of NYLL § 652 and 12 N.Y.C.R.R. § 142-3.2.

88.     Cushman & Wakefield's failure to pay overtime wages was willful.

89.     As a result of Cushman & Wakefield's violations of the NYLL, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, statutory damages, attorneys' fees, costs, and interest.

## THIRD CAUSE OF ACTION
### Sexual Harassment/Sex Discrimination in Violation of the NYSHRL

90.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

91.     As described herein, Defendant discriminated against Plaintiff on the basis of sex in violation of the NYSHRL.

92.     Defendant discriminated against Plaintiff by subjecting her to sexual harassment, disparate treatment and a hostile work environment because of her sex.

12

93.    Defendant adversely affected the terms, conditions, and privileges of Plaintiff's employment.

94.    Defendant's conduct was willful, and they knew their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

95.    Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damages unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYSHRL

96.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

97.    As described herein, Defendant retaliated against Plaintiff in violation of the NYSHRL.

98.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm.

99.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish and emotional distress.

100.    Defendant's unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL.

## FIFTH CAUSE OF ACTION
### Sexual Harassment/Sex Discrimination in Violation of the NYCHRL

101.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

102.    As described herein, Defendant discriminated against Plaintiff on the basis of gender in violation of the NYCHRL.

103.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm.

13

104.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish and emotional distress.

105.    Defendant's unlawful actions constitute malicious, willful, and wanton violations of the NYCHRL.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

106.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

107.    By the actions described above, among others, Defendant retaliated against Plaintiff in violation of the NYCHRL.

108.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm.

109.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish and emotional distress.

110.    Defendant's unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NYCHRL.

## SEVENTH CAUSE OF ACTION
### Negligent Training and Supervision

111.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

112.    At all relevant times, Cushman & Wakefield owed Plaintiff a duty to exercise reasonable care in the hiring, training, supervision, and retention of its employees, including supervisory personnel.

113.    Defendant breached that duty of care in the retention and/or supervision of Brown who was unfit to be employed and who was not adequately supervised during his employment.

14

114.    Defendant knew or should have known of Brown's propensity to engage in inappropriate and unlawful conduct, including sex-based harassment, based on Plaintiff's complaints and other information available.

115.    Defendant failed to take any remedial action against Brown, allowing his behavior to continue unabated.

116.    Defendant's failure to act was not merely negligent, but reflected a conscious disregard of known risks and permitted Brown's conduct to continue and escalate.

117.    As a result, Plaintiff is entitled to recover damages against Defendant Cushman & Wakefield.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of all issues and claims of this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

a)    A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States, New York State, and New York City;

b)    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

c)    An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her emotional distress;

d) An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff including, but not limited to, loss of income, reputational harm, and harm to professional reputation, in an amount to be determined at trial, plus pre-judgment interest;

e) An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

f) Pre-judgment interest on all amounts due;

g) An award of costs that Plaintiff has incurred in this action, including but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

h) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 25, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

**By:** _____
Monica Hincken
Kassandra Vazquez
Joseph & Norinsberg, LLC
825 Third Ave, Suite 2100
New York, NY 10022
212-227-5700
mhincken@employeejustice.com
kassandra@employeejustice.com

*Counsel for Plaintiff*